UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CAROL J. VINCENT** | **:** | **DOCKET NO. 17-cv-573** |
| **VERSUS** | **:** | **JUDGE WALTER** |
| **CITY OF SULPHUR ET AL.** | **:** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss [doc. 23] filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by the City of Sulphur, Mayor Chris Duncan, Police Chief Lewis Coats, and Officer Don Briscoe ("the Sulphur defendants") in response to the amended civil rights complaint [doc. 5] filed in forma pauperis by pro se plaintiff Carol J. Vincent ("Vincent"). Vincent has not filed an opposition to this motion but has since amended his complaint. Doc. 35.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons provided below, **IT IS RECOMMENDED** that the Motion to Dismiss [doc. 23] be **GRANTED**, that all claims against the Sulphur defendants under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**, and that the excessive force claim relating to Vincent's arrest be **DISMISSED WITH PREJUDICE** as to all defendants.

**I.**
**BACKGROUND**

This action arises from an altercation between Vincent and three individuals – Lawrence Nix, Robert Louviere, and Ernest Barkate – named as defendants herein at a McDonald's in Sulphur, Louisiana,

on or about April 17, 2016. Doc. 5, p. 26. Vincent contends that he was seated with Nix and Louviere when Barkate joined them and began to make a series of provocative remarks, on the subject of whether an individual named "Koonce" could beat up Vincent. *Id.* at 26–27. Vincent states that he attempted to ignore the remarks, but then placed a hundred dollar bill on the table and told Barkate to match it and have Koonce meet him behind a nearby carwash. *Id.* at 27. The remarks between Barkate and Vincent continued to escalate, with both attempting to provoke the other to a fight, until Barkate allegedly stood and drew back his fist. *Id.* at 27–28. Vincent admits that, before Barkate could strike, he (Vincent) hit him on the side of the face, knocking him to the floor, and that the incident was captured on video surveillance by McDonald's. *Id.* at 28.

Vincent contends that Barkate then contacted the Sulphur Police Department ("SPD") and reported that he had been hit without provocation, but that SPD officers reviewed the surveillance footage and determined that no action was warranted because it appeared the parties were engaged in "mutual combat." *Id.* Officer Briscoe took a cell phone video of the surveillance footage and, according to Vincent, SPD officers shared this footage with Calcasieu Parish Sheriff's Deputy Lamar Mayo on April 19, 2016, along with their conclusion that Vincent had acted in self-defense. *Id.* at 14–15, 28, 34. He also alleges that Barkate, Louviere, and Knicks made false statements to both the SPD and the CPSO. *Id.* at 38. He further alleges that Calcasieu Parish Sheriff's Office ("CPSO") deputies fabricated an affidavit in order to have Vincent arrested for the attack on Barkate, "with full knowledge that the SPD had advised them that [he] was acting in [s]elf-defense." *Id.* at 34. He states that he was arrested by CPSO defendants and SPD defendants on a warrant issued pursuant to this affidavit on April 27, 2016, and charged with simple battery of the infirm, but that the Calcasieu Parish District Attorney's Office ultimately decided not to prosecute the case. *Id.* at 14, 29–31.

Vincent raises numerous civil rights claims under 42 U.S.C. § 1983 based on the above facts, alleging that "[h]ind sight, and conspiracy theory, now dictate[] that there obviously was a conspiratorial meeting, and effort, between the SPD and the CPSO to arrest and jail plaintiff," and that Barkate, Louviere, and Nix were also involved in this alleged conspiracy. *Id.* at 28–29, 36–39. Specifically, he maintains that the Sulphur defendants engaged in a conspiracy with the CPSO defendants and with Barkate, Louviere, and Nix to effect his unconstitutional arrest, and that SPD Police Chief Lewis Coats, the City of Sulphur, and Sulphur Mayor Chris Duncan are also liable under § 1983 for failure to adopt policies and train officers in order to prevent this situation. *Id.* at 16–17, 28–29, 35–39. He also contends that the CPSO and SPD defendants used excessive force in arresting him, placing the handcuffs so that they "cut into his wrists with visible red and indented marks." *Id.* at 14, 31.

In his third amended complaint, Vincent raises tort claims based on the above allegations and elaborates on his belief that the Sulphur defendants' actions form a "flagrant political vendetta." Doc. 35, p. 21. He alleges that Briscoe's cell phone video was "fabricated," and that Briscoe submitted this "illegally obtained evidence" to the CPSO "for the sole purpose of achieving his goal of having plaintiff falsely charged, falsely arrested, and false jailed as a retaliatory action." *Id.* at 15–16; *see id.* at 20. He raises these same allegations against unnamed officers in assisting Briscoe, and alleges that Briscoe in particular has a history of harassing him.[1] *Id.* at 15–17. He alleges that based on the amount of time that elapsed between the Sulphur Police Department's investigation at the scene and his arrest, "it is inconceivable" that Police Chief Lewis Coats was not consulted on the SPD defendants' actions, and maintains that Coats was an active player in the alleged conspiracy leading to his "politically motivated" arrest. *Id.* at 20. He also alleges that Coats was hostile to him when he called the SPD to complain. *Id.* at 19–20. Finally, he maintains that Mayor Chris Duncan was an active participant in this alleged conspiracy,

---

[1] Vincent also alleged a history of harassment by Officer Briscoe in his previous complaint. *See* doc. 5, pp. 15–16.

meeting with Barkate on or about April 19, 2017, and that he (Duncan) also failed to insure that the SPD adhered to proper policies and procedures. *Id.* at 22–23.

The Sulphur defendants now bring the instant motion to dismiss, alleging that Vincent fails to state a claim on which relief may be granted in several respects as to his civil rights claims. Doc. 23.

## II.
### LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal of a plaintiff's claim for failure to state a claim for which relief may be granted. To survive such a motion, "the plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). In other words, the plaintiff must provide enough factual allegations which, taken as true, raise his right to relief "above the speculative level." *Twombly*, 127 S.Ct. at 1965. The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether it is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## III.
### ANALYSIS

The Sulphur defendants maintain that the claims brought by Vincent against them under § 1983 are fatally deficient and should therefore be dismissed. We review these arguments based on all of the all of the allegations now pending before this court.

### A. *Conspiracy claims*

The Sulphur defendants first allege that the factual allegations are insufficient to submit a claim of conspiracy. Under 42 U.S.C. § 1983, a plaintiff has a cause of action against any person who, acting under

color of state law, deprives him of a right secured by the Constitution or laws of the United States. *E.g.*, *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). A private party can be held liable under § 1983 if it is a willing participant in a conspiracy with a state actor. *E.g.*, *Three Legged Monkey, LP v. City of El Paso*, 2015 WL 12915683, *2 (W.D. Tex. Jan. 8, 2015). "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quotation omitted).

Thus, to state an actionable conspiracy claim under § 1983, a plaintiff must allege (1) "an agreement between private and public defendants to commit an illegal act" and (2) "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). However, a heightened standard exists for pleading conspiracy under civil rights statutes and plaintiffs "must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987) (footnote omitted).

Here there is no argument that at least some of the claims against the CPSO defendants and private actors, if true, might amount to constitutional violations. However, the Sulphur defendants dispute that Vincent has shown their involvement sufficient to state a claim for conspiracy. As the Sulphur defendants point out, the allegations only show that SPD officers responded, determined at the scene that Vincent was acting in self-defense, and later met with CPSO officers and provided evidence of same. They do not show that SPD officers were complicit in any allegedly unconstitutional effort by CPSO and the private parties to have Vincent arrested and charged, while knowing that the charges were baseless.

In his third amended complaint, Vincent alleges that various Sulphur defendants bore and had in the past expressed ill will toward him, and that Barkate met with Mayor Chris Duncan after the fight and before Vincent's arrest. However, he does not show any coordinated action or agreement between Duncan

or any other Sulphur defendant and the CPSO, other than showing the surveillance footage[2] and sharing their conclusion that Vincent acted in self-defense. Accordingly, Vincent fails to allege any plausible agreement involving any Sulphur defendant for the deprivation of his constitutional rights. The conspiracy claims against the Sulphur defendants should therefore be dismissed.

### B. *Supervisory liability*

The Sulphur defendants argue that Vincent has failed to state a claim based on supervisory liability. As they note, "[a] claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." *Webber v. Mefford*, 43 F.3d 1340, 1344–45 (10th Cir. 1994) (citing *Collins v. City of Harker Heights*, 112 S.Ct. 1061, 1066 (1992); *City of Los Angeles v. Heller*, 106 S.Ct. 1571, 1573 (1986)). Here, as Vincent has not shown a constitutional violation by any SPD officer, he cannot state a claim against their supervisors under § 1983 on those theories. Accordingly, such claims against the Sulphur defendants should be dismissed.

### C. *Excessive Force*

Finally, the Sulphur defendants contend that Vincent cannot make out a claim for unconstitutional use of excessive force based on his arrest. In order to prevail on an excessive force claim under § 1983, "a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). While a "significant injury" is no longer required to satisfy the first element, it must be more than *de minimis*. *Id.* at 752 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). "[H]andcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *accord Tarver*, 410 F.3d at 752. Accordingly, Vincent's claim of excessive

---

[2] Vincent's conclusory allegation that this footage was fabricated or illegally obtained is puzzling, as he also claims that this is the evidence that exonerates him and proves law enforcement's animus in proceeding with his arrest anyway.

force, arising from handcuffing that left him with red marks and indentations on his wrists, fails this circuit's test on the first element and should thus be dismissed with prejudice. As Vincent's excessive force allegations as to the CPSO defendants are identical, this conclusion should inure to their benefit as well.

## IV.
### CONCLUSION

For reasons stated above, **IT IS RECOMMENDED** that the Motion to Dismiss [doc. 23] be **GRANTED** and that all claims brought under § 1983 against the Sulphur defendants be **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6). The excessive force claim should likewise be **DISMISSED WITH PREJUDICE** as to all defendants. This recommendation does not extend to any of the plaintiff's tort claims, which were not addressed in the instant motion.

While a *pro se* litigant should ordinarily be given an opportunity to amend his complaint before it is dismissed, leave to amend is not required if the petitioner has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Here Vincent has already amended his complaint multiple times, including one time since the filing of this motion. The facts are well known to him, as are the laws under which he seeks to raise his claims. Furthermore, Vincent has made no response to the Sulphur defendants' motion. Therefore we do not deem it necessary to allow leave to amend before recommending dismissal of these claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the**

**date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

    THUS DONE this 23rd day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE